## DANIEL WEST *vs.* SIDNEY SPAULDING.

B. mortgaged land to S., and then conveyed the equity of redemption to P., who conveyed it to S.: On the 10th of March 1841, S. gave P. a written agreement to convey the land to him, or his assigns, by a good and sufficient quitclaim deed, on his paying S. a certain sum: P. was in actual possession of the land, until after the 1st of May 1841, and was taxed for it for the years 1840 and 1841: On the 8th of May 1841, P. assigned to W. the agreement of S. to convey the land, and S. conveyed it to W. by a quitclaim deed, in which he covenanted with W., that he would warrant and defend against the lawful claims and demands of all persons claiming by, through or under S., and against no other claims or demands: P. did not pay the taxes assessed on the land, and W., being compelled to pay them, brought an action against S., on the said covenant, to recover the amount of said taxes. *Held*, that the claim on the land for the taxes thereon, was not a claim by, through or under S., and that the action could not be maintained.

THIS was an action of covenant broken. The declaration alleged that the defendant, on the 18th of March 1842, by his deed of that date, conveyed to the plaintiff a certain piece of land in Lowell, with a dwelling-house thereon; that the defendant, in and by said deed, covenanted with the plaintiff, that he would warrant and defend the said premises against the lawful claims and demands of all persons claiming by, through or under him, the said Spaulding. The breach of this covenant was thus assigned in the plaintiff's declaration: "Now the plaintiff saith, that at the time of making and executing said deed, the said tenements were not free from all incumbrances of lawful claims and demands of all persons claiming by, through or under him, the said Spaulding, but the said premises, being liable to assessment for taxes in the city of Lowell, on the first day of May 1841, and being then the property of said Spaulding, were assessed by the proper authorities in said city, for taxes for that year, in the sum of sixteen dollars, and were taxed to one Loring Pickering, who was at that time in possession of said premises, as the tenant and by the permission of said Spaulding; which sum neither the said Pickering nor the said Spaulding has ever paid, and the plaintiff has been compelled to pay the same," &c.

The declaration also alleged that said premises, at the date of the deed aforesaid, were also liable to another tax of $13·26, for the year 1840, which was taxed to said Loring

Pickering; that neither the defendant nor said Pickering had ever paid the same; and that the plaintiff had been compelled to pay it.

At the trial in the court of common pleas, before *Washburn*, J. the plaintiff produced a quitclaim deed, made by the defendant to him, bearing the date and describing the premises mentioned in the declaration, and containing the following covenant: "And I, for myself, my heirs, executors and administrators, do covenant with the said Daniel West, his heirs and assigns, that I will, and my heirs, executors and administrators shall, warrant and defend the same to the said Daniel West, his heirs and assigns forever, against the lawful claims and demands of all persons claiming by, through or under me, and against no other claims or demands."

The plaintiff then gave evidence that he had paid two taxes, assessed to Loring Pickering, upon the real estate conveyed by the said deed; one for the year 1840, and one for the year 1841. The plaintiff also gave in evidence a mortgage deed of said real estate, made to the defendant by Artemas Bedlow, dated March 2d 1833, to secure payment to the defendant of a promissory note of the same date, for the sum of $690, payable in five years, with yearly interest. This deed contained the usual covenant against incumbrances, and also a covenant of warranty.

The defendant then gave in evidence a deed of the said real estate made by the said Bedlow to Loring Pickering, and dated in the year 1834; and also a quitclaim deed of the same from said Pickering to the defendant, dated March 18th 1841. The defendant also put into the case a written promise, not under seal, made by him to said Pickering, on said 18th of March 1841, "to sell and convey to said Pickering, his heirs, executors, administrators or assigns, by good and sufficient quitclaim deed," the aforesaid real estate, provided the said Pickering should pay to the defendant, or his heirs, executors or administrators, the sum of $1257 within one year. The defendant also gave in evidence an instrument under seal, executed by said Pickering, on the 8th of May

47 *

1841, by which said Pickering, in consideration of $3500, paid to him by said West (the plaintiff) assigned and transferred to said West the aforesaid promise of the defendant to said Pickering, to convey said real estate to him, and authorized said West to enforce, in said Pickering's name, the performance of said Spaulding's promise, if he should fail to keep the same.

It appeared in evidence that said Pickering was in actual possession of said real estate during the years 1840 and 1841, and up to the date of the deed from the plaintiff to the defendant, viz. March 18th 1842, and that the defendant had never been in actual possession thereof. It also appeared that the aforesaid taxes were duly assessed to said Pickering.

The judge ruled that the plaintiff could not sustain this action to recover the amount of said taxes; and a verdict was rendered for the defendant. The plaintiff alleged exceptions to the judge's ruling.

*B. F. Butler*, for the plaintiff.

*Knowles*, for the defendant.

SHAW, C. J. This was a very special and limited warranty, in a quitclaim deed made by the defendant to the plaintiff, against the lawful claims and demands of all persons, claiming by, through or under him, and against no other claims or demands. Now, supposing the taxes on the estate for 1840 and 1841 did constitute a lien upon the estate, it was not an incumbrance made or suffered by the defendant, nor was the claim on the land, as a security for these taxes, a claim by or under the defendant. The incumbrance was suffered by Pickering, a prior holder of the land. The taxes were duly assessed to him. When the first tax was assessed, Pickering was a mortgagor in possession, taking the rents and profits, and the defendant was mortgagee. In March 1841, before the second of these taxes was levied, Pickering, by a quitclaim deed, released the equity of redemption to the defendant, who was then mortgagee, and thus vested the entire estate in him. But, at the same time, and as part of the same transaction, the defendant gave back an agreement

to convey the estate to him, by a quitclaim deed, in one year, upon payment of a sum named. During that year, Pickering was in possession, under an equitable title. The tax was duly assessed to him; and he, and not the defendant, suffered the incumbrance caused by it.

But if we were permitted to look beyond the terms of the defendant's very limited covenant of warranty against his own acts, the result would be the same. The plaintiff took an assignment of the defendant's agreement to convey the estate to Pickering by a quitclaim deed. As assignee, the plaintiff took the rights of Pickering only, subject to all equities of the defendant, as against Pickering. The defendant, under his agreement, would have been liable for no incumbrances, except those suffered by himself, after the agreement; and *a fortiori* for none suffered by Pickering himself. By the assignment, the plaintiff stood in the same situation with his assignor, entitled to the same benefits, and subject to the same burdens.                   *Exceptions overruled.*